UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WING WING TRADING CO. LTD.,<br><br>Plaintiff,<br><br>vs.<br><br>HALSTON OPERATING COMPANY, LLC, HALSTON ORGANIZATION CO., LLC, "JOHN DOES" 1 THROUGH 10, and "JOHN DOE ENTITIES" 1 THROUGH 10,<br><br>Defendants. | Civil No.<br><br>**COMPLAINT** |

Plaintiff, Wing Wing Trading Co. Ltd. ("Wing Wing" or "Plaintiff"), by and through its attorneys, Reppert Kelly, LLC, for its Complaint ("Complaint") against Halston Operating Company, LLC and Halston Organization Co., LLC (collectively referred to as "Halston") and John Doe 1 through 10 (all collectively referred to as "Defendants", alleges:

## NATURE OF ACTION

1. Plaintiff brings the within action for account stated, breach of contract for goods produced, sold and delivered and unjust enrichment arising out of Defendants' failure to pay for apparel goods wrongly cancelled and/or produced, sold and delivered by Plaintiff. Plaintiff seeks damages in the amount of at least $289,979.05.

## PARTIES

2. Plaintiff, Wing Wing Trading Co. Ltd. is a corporation incorporated under the laws of Hong Kong, doing business at Room 201A, 2/F., Shui Hing Centre, 13 Sheung Yuet Road, Kowloon Bay, Kowloon, Hong Kong. Wing Wing is a manufacturer and supplier of ladies apparel.

3. Upon information and belief, defendant Halston Operating Company, LLC is a Delaware limited liability company registered to conduct business in the State of New York.

4. Upon information and belief, defendant Halston Organization Co., LLC is a California limited liability company registered to do conduct business in the State of York.

5. Upon information and belief, Halston Operating Company, LLC and Halston Organization Co., LLC (collectively, "Halston") are affiliated companies under common ownership and/or control.

6. Halston is an importer of apparel products.

7. Upon information and belief, John Doe represents any entity that is related to the Halston brand structure as an alter ego and/or subsidiary or parent company.

## JURISDICTION AND VENUE

8. This court has subject matter jurisdiction over the within civil action pursuant to 28 U.S.C. § 1332 where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between a corporate citizen of a foreign country and citizens of the United States.

9. Pursuant to 28 U.S.C. § 1391(b), venue lies in this district because each of the defendants resides within this judicial district and/or because a substantial part of the events giving rise to the claims asserted herein occurred within this judicial district.

## BACKGROUND

10. Wing Wing previously produced and manufactured goods for Haute Hippie House, LLC ("HHH") prior to its filing for bankruptcy in or about 2016.

11. In 2017, Halston acquired Haute Hippie.

12. Halston approached Wing Wing to produce goods for Halston using the Haute Hippie label.

13. Wing Wing initially refused having lost substantial monies due to the insolvency of HHH.

14. Halston representatives continued to request that Wing Wing produce goods for this label and assured Wing Wing that the goods would be paid for by Halston.

15. Halston confirmed its representations in writing to Wing Wing.

16. Halston also promised Wing Wing that it would pay for samples and development costs.

17. Halston promised Wing Wing that its terms would be 60 days; (i.e. that it would pay for goods within 60 days of the ship date).

18. Wing Wing agreed to produce goods for Halston based on the representations made.

19. All purchase orders were issued to Wing Wing from Halston Operating Company, LLC.

20. In or about September of 2017, Halston placed purchase orders with Wing Wing for Spring 2018 goods requested under purchase orders, 19622, 19623, 19625, 19626, 19655 (the "Spring 2018 Goods").

21. The Spring 2018 Goods were timely shipped and received by Halston.

22. Halston was invoiced for the agreed contract price of $54,644.96 for the Spring 2018 Goods.

23. In or about December of 2017, Halston placed purchase orders with Wing Wing for Pre Fall 2018 goods requested under purchase orders, 20196, 20197, 20198, 20199, 20200, 20213 (the "Pre Fall Shipped 2018 Goods").

24. The Pre Fall Shipped 2018 Goods were shipped in or about May of 2018.

25. Halston was invoiced for the agreed contract price of $63,689.70 for the Pre Fall Shipped 2018 Goods.

26. Halston placed orders for the Pre Fall Shipped 2018 Goods with Wing Wing which were timely produced, shipped and accepted by Halston.

27. Halston also placed purchase orders for Pre Fall goods under purchase orders 20201, 20202, 20203, 20204, 20208 (the "Pre Fall 2018 Produced Goods").

28. The identified Pre Fall 2018 Produced Goods were not shipped due to the outstanding unpaid invoices in violation of the terms therein.

29. Halston owes Wing Wing $65,039.50 for the Pre Fall 2018 Produced Goods.

30. Halston issued purchase orders to Wing Wing for Pre Fall 2018 goods under purchase orders 20205 and 20207.

31. Halston owes Wing Wing $11,101.66 for fabric and trim for Pre Fall 2018 Goods under purchase orders 20205 and 20207 that were not produced.

32. Wing Wing lost the ability to make the agreed upon additional $19,440.50 for the Pre Fall 2018 goods that were not produced due to Halston's delinquent payment status under purchase orders 20205 and 20207.

33. Halston owes Wing Wing $429.95 under invoice number W-180217 for the Pre Fall 2018 sample produced at its direction. The cost was $429.95.

34. Halston placed several purchase orders for Fall 2018 goods to be produced with Wing Wing.

35. Subsequently, Halston without warning announced that it was cancelling the Fall 2018 purchase orders

36. This wrongful cancellation caused Wing Wing to incur product development, sample charges and fabric and trim expenses for materials acquired in reliance of those purchase orders in the amount of $9,075.18.

37. Halston was invoiced for those costs and has failed to pay same.

38. Wing Wing sustained a loss of $60,207.60 for Fall 2018 goods wrongfully cancelled under purchase orders 20818,20819,20820, 20821,20822, 20842, and 20856.

39. Wing Wing is a small factory and reserved space for the Halston orders.

40. Due to the wrongful and late cancellation, Wing Wing forewent other orders and it was too late to use the reserved factory space.

41. Wing Wing also incurred development costs for the Spring 2019 prototype in the amount of $350.00 which was invoiced to Halston and remains unpaid.

42. Halston made no complaints about quality of the goods produced until a demand for payment was made by counsel.

43. Halston has failed to return the alleged defective goods under purchase order 20213 despite Wing Wing's demand for their return.

44. The following chart reflects damages incurred due to non-payment of the following purchase orders but does not reflect incidental damages.

| Collection | Balance Due | Purchase Order("P.O.") | Invoice Number |
|---|---|---|---|
| Spring 2018 | $54,644.96 | 19622, 19623, 19625, 19626, 19655 | W170513 W170514 |
| Pre Fall 2018 | $63,689.70 | 20196, 20197, 20198, 20199, 20200, 20213 | W180014 W180211 |
| | $65,039.50 | 20201, 20202, 20203, 20204, 20208 | |
| | $11,101.66 | 20205, 20207 | W180218 W180219 |
| | $429.95 | | W180217 |
| Fall 2018 | $9,075.18 | | W180206 W170510 W180209 |
| Pre Spring 2019 | $350.00 | | W180208 |
| | $204,330.95 | | |
| **Lost Profits** | | | |
| Pre Fall 2018 | $19,440.50 | 20205, 20207 | |
| Fall 2018 | $60,207.60 | 20818, 20819, 20820, 20821, 20822, 20842, 20856 | |
| | $79,648.10 | | |
| | $283,979.05 | | |

## FIRST COUNT
**(Breach of Contract)**

45.   Plaintiff repeats and realleges each and every one of the preceding paragraphs of this Complaint as if fully set forth herein.

46.   In accordance with the purchase orders placed by Halston, Wing Wing caused the finished goods and prototypes to be delivered to Halston's delivery agents on various dates, including shipments in March and May of 2018. The finished shipped goods and protypes delivered under approximately 11 separate invoices, together total $139,291.45.

47.   The requested goods were delivered and accepted by Halston in good order and condition and in compliance with Halston's requests.

6

48.     Despite such delivery and acceptance, Halston has failed to make payment for the invoiced price of the Goods, and there remains a total outstanding balance due from Halston to Wing Wing of $139,291.45.

49.     In addition, Wing Wing produced goods that were not yet shipped due to non-payment.  The goods produced total $65,039.50.

50.     Halston owes Wing Wing $204,330.95 for goods produced and related costs therein.

51.     Despite repeated demands, Halston has refused to make any payment against the balance owed.

52.     As a direct and proximate result of Halston's breach of its purchase orders, Plaintiff has suffered damages of at least $204,330.95 in principal, accrued interest, costs and fees as well as other damages in an amount to be proven at trial.

## SECOND COUNT
### (Goods Sold and Delivered – N.Y. U.C.C. § 2-709)

53.     Plaintiff repeats and realleges each and every one of the preceding paragraphs of this Complaint as if fully set forth herein.

54.     Wing Wing entered into valid and binding contract(s) with Halston for the sale and delivery of ladies garments.

55.     Halston served purchase orders upon Wing Wing.

56.     Wing Wing in turn produced goods in accordance with the Halston purchase orders.

57.     Wing Wing performed all of its obligations required under the purchase orders..

58. Halston breached its obligations under the purchase orders by failing to make the full payment for the finished goods produced in accordance therewith, leaving a balance due and owing to Wing Wing in the amount of $283,979.05.

59. As a direct and proximate result of Halston's breach, Plaintiff has suffered damages in the amount of at least $283,979.05.

## THIRD COUNT
### (Seller's Incidental Damages Due to Breach – N.Y. U.C.C. § 2-710)

60. Plaintiff repeats and realleges each and every one of the preceding paragraphs of this Complaint as if fully set forth herein.

61. Wing Wing entered into a valid and binding contract with Halston for the sale and delivery of ladies garments.

62. Wing Wing performed all of its obligations required under the contract.

63. Halston breached its contractual obligations by failing to timely pay for goods ordered and received and by cancelling previously placed purchase orders.

64. Due to Halston's wrongful actions, Wing Wing has incurred charges and expenses in storing goods, stopping delivery, and lost of benefit of the orders placed and lost of opportunity to use its factory for other orders.

65. Wing Wing has also incurred fabric and trim costs for materials obtained to complete the purchase orders prior to the wrongful cancellation.

66. Wing Wing designated a work group for production of the wrongfully cancelled Halston goods.

67. Due to Halston's breach Wing Wing must continue to pay the workers designated for production of the goods ordered by Halston under Chinese law whereas penalties incurred for layoffs are punitive.

68. As a direct and proximate result of Halston's breach, Plaintiff has suffered damages.

## FOURTH COUNT
### (Unjust Enrichment)

69. Plaintiff repeats and realleges each and every one of the preceding paragraphs of this Complaint as if fully set forth herein.

70. Wing Wing shipped finished goods to Halston.

71. Halston has been selling the finished goods on the Haute Hippie website as well as through various resellers including large department stores including upon information and belief Bloomingdales, Nordstrom and Neiman Marcus.

72. Halston is collecting monies from third parties for the finished goods produced by Wing Wing.

73. Halston is being unjustly enriched whereas Wing Wing has not been compensated for the finished goods shipped to Halston.

74. The amount of $204,330.95 represents the fair and reasonable value of the produced finished goods, which sum remains due and owing.

**WHEREFORE**, Wing Wing demands judgment against Halston, as follows:

a. on the First Count, damages in the amount of at least $204,330.95;

b. on the Second Count, damages in the amount of at least $283,979.05, plus incidental and other damages pursuant to the New York Uniform Commercial Code;

c. on the Third Count, damages in the amount of at least $283,979.05;

c. on the Fourth Count, damages in the amount of at least $204,330.95; and

d. granting such other relief as the Court deems just and proper, including interest, costs and reasonable attorneys' fees.

                                REPPERT KELLY, LLC

Dated: Basking Ridge, New Jersey    By:   *s/Christopher P. Kelly*
         August 8, 2018                               Christopher P. Kelly
                                                              120 Mountain View Boulevard
                                                              Post Office Box 509
                                                               Basking Ridge, New Jersey 07920
                                                               (908) 605-2120

                                                              570 Lexington Avenue, 8th Floor
                                                               New York, New York, 10022
                                                               (212) 490-0988

                                                              *Attorneys for Plaintiff*